NOT DESIGNATED FOR PUBLICATION

Nos. 116,555
116,556
116,557
116,558
116,559

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN THE INTEREST OF T.W., D.W., K.W., X.M., and A.M.,
Minor Children.

MEMORANDUM OPINION

Appeal from Atchison District Court; MARTIN J. ASHER, judge. Opinion filed April 28, 2017.
Affirmed.

*John R. Kurth*, of Kurth Law Office Inc., P.A., of Atchison, for appellant natural mother.

*Andrew E. Werring*, of Werring Law Office, LLC, of Atchison, for appellant natural father.

*Patrick E. Henderson*, assistant county attorney, and *Gerald R. Kuckelman*, county attorney, for
appellee State of Kansas.

Before BUSER, P.J., MCANANY and STANDRIDGE, JJ.

*Per Curiam*:  In this consolidated appeal, Mother challenges the district court's
order terminating her parental rights. The district court determined that Mother was unfit
under the statutory factors set forth in K.S.A. 2016 Supp. 38-2269. Further, the district
court decided that Mother's unfitness was unlikely to change in the foreseeable future and
termination of Mother's parental rights was in the children's best interests. On appeal,
Mother seeks reversal on the basis that insufficient evidence supported the district court's
termination of her parental rights.

1

Mother is the natural parent of the five children involved in these proceedings: D.W. (born in 2007), K.W. (born in 2008), X.M. (born in 2011), A.M. (born in 2012), and T.W (born in 2015). Father is the natural parent of X.M. and A.M. The natural father of T.W. was unknown. The father of D.W. and K.W. is P.S., but his parental rights were terminated and he did not appeal.

In May 2014, the State separately petitioned the district court under K.S.A. 2016 Supp. 38-2234 seeking to have D.W., K.W., X.M., and A.M. declared children in need of care (CINC) in Brown County. In the petitions, the State alleged that the Department of Children and Families (DCF) received reports that Father physically abused D.W. and K.W. The State further alleged that Mother failed to adequately supervise the children, and their health and welfare were endangered without placement outside the home.

A few months later, the district court held an adjudication hearing. The district court granted the State's CINC petitions, finding clear and convincing evidence that the children were without adequate parental care, control, or sustenance, and the condition was not due solely to the lack of financial means; that the children were without care or control necessary for the their physical, mental, or emotional health; and that the children had been physically, mentally, or emotionally abused or neglected or sexually abused. The district court ordered the children to remain in Mother's custody.

On August 12, 2014, the district court held a disposition hearing. The district court found that the children were likely to sustain harm if not immediately removed from Mother's home and placed in DCF custody. In January 2015, Mother relocated to Atchison County so that she could access mental health treatment without a mode of transportation. The Brown County District Court transferred the children's cases to the Atchison County District Court.

In May 2015, Mother gave birth to T.W. At birth, T.W.'s meconium tested positively for marijuana, methamphetamine, and amphetamine. On May 27, 2015, the State petitioned the district court under K.S.A. 2016 Supp. 38-2234 seeking to have T.W. also declared a CINC. On that same day, the district court placed T.W. in DCF custody due to the positive meconium test. The district court held an adjudication hearing on June 4, 2015. Mother did not contest the State's CINC petition. The district court found that T.W. was a CINC and ordered that he remain in DCF custody.

On July 9, 2015, the district court held a disposition hearing. At the hearing, the district court approved a reintegration plan for the children. The reintegration plan required that Mother complete the following tasks within 6 months:

1. Attend all scheduled visitations with her child a minimum of once per week contingent on two consecutive negative UA's;
2. Schedule and complete a RADAC screen and follow all recommendations if she submits a positive UA;
3. Continue participating in mental health services and follow all recommendations;
4. Maintain appropriate housing, ensuring utilities are in working order, and have sufficient space for the children;
5. Have a legal source of income to support herself and her children;
6. Have sufficient means of transportation and age appropriate child restraints for the children;
7. Refrain from using drugs or alcohol and submit to random drug screens with any no-shows and diluted UA's being considered positives tests;
8. Maintain regular contact with KVC and keep KVC updated on whereabouts and contact information;
9. Provide KVC with a list of parenting skills she learned during her most recent parenting class and demonstrate the parenting skills during her visits; and

3

10. Sign all releases for the courts and KVC.

Separately, the district court ordered that (1) Mother have no visitation unless she had two consecutive clean UA's; (2) Mother participate in KVC's aftercare program; (3) Mother participate in random drug testing; (4) Mother participate in a RADAC screen and follow all recommendations; (5) Mother participate in a substance abuse program and narcotics anonymous meetings; and (6) the children participate in mental health services and follow all recommendations.

After the district court approved the reintegration plan, Mother had daily unsupervised visitation with T.W. and weekly visitation with the four other children. By early August 2015, Mother was progressing toward completion of the reintegration plan, and, on August 18, 2015, D.W. and K.W. were placed in Mother's custody. Mother maintained weekly visitation with the three younger children.

On August 27, 2015, Mother was involved in a car accident in Saint Joseph, Missouri. Mother suffered serious physical injury in the accident, breaking her pelvis and a shoulder blade, cracking three ribs, and rupturing her spleen. While at the hospital, Mother tested positive for marijuana, amphetamine, methamphetamine, and benzodiazepine. Immediately following the accident, Mother spent 2 weeks at Mosaic Hospital and another 2 weeks at a rehabilitation center in Overland Park.

After the accident, D.W. and K.W. were temporarily placed in their aunt's care, although they were technically in Mother's custody. Mother visited D.W. and K.W. at their aunt's home. On October 15, 2015, D.W. and K.W. were officially removed from Mother's custody and placed in foster care. The main reason they were removed from Mother's custody was Mother's drug use.

4

On December 9, 2015, the State moved to terminate Mother's parental rights. Soon afterward, on January 22, 2016, Mother was arrested for possession of methamphetamine and, later, pled guilty to the felony charge. Mother was briefly released on bond. Within 6 days, Mother violated the conditions of her bond by testing positive for illegal drugs. Mother was incarcerated from that point forward and was scheduled for release on July 12, 2016.

On May 26, 2016, the district court held a termination hearing. The children's cases were consolidated for the purpose of the hearing.

*Mary Hoffman: Therapeutic Case Manager for KVC*

Mary Hoffman, a therapeutic case manager for KVC, testified at the termination hearing regarding KVC's efforts to reintegrate the children into Mother's care. Hoffman worked directly as Mother's caseworker since July 2015, when the children's cases were transferred to Atchison County.

Hoffman stated that, between August 2014 and November 2015, Mother tested positive for illegal drugs 18 times. According to Hoffman, Mother also failed to show for several UA's. Hoffman further testified that Mother failed attend all scheduled visitation with the children and that Mother's drug use was one of the reasons her visitation did not occur. Hoffman stated that Mother's last visitation occurred on October 23, 2015.

In Hoffman's opinion, inpatient treatment was appropriate for Mother. Hoffman believed, if Mother were to complete inpatient treatment after her release from jail, that it could be a positive first step toward reintegration. Hoffman further stated that Mother was capable of complying with the reintegration plan.

*Father's Testimony*

At the time of the termination hearing, Father was incarcerated in Missouri. Father's testimony pertained to the allegations of physical abuse and his efforts to maintain contact with the children while incarcerated. Thus, a detailed discussion of his testimony is unnecessary.

*Mother's Testimony*

Mother readily admitted that she had a drug problem and used marijuana and benzodiazepine while pregnant with T.W. She also admitted that, before the accident, she "[o]n and off" used marijuana, methamphetamine, amphetamine, and benzodiazepine, though she claimed she was not under the influence at the time of the car accident. Mother conceded that she attempted to falsify a drug test on March 23, 2015. She admitted that she pled guilty to two counts of misdemeanor theft for stealing from Walmart.

Mother testified that, at the time of the accident, she was working and renting a home. She denied that she quit her job before the accident. She also explained that she was having unsupervised visitation with the three younger children at her home. She further testified that she did not suffer any residual injury due to the accident and her injuries suffered in the accident would not cause her any problems in caring for the children. She stated that, after the accident, she did not have transportation and neither KVC nor DCF offered any transportation assistance. She further asserted that she "slipped into . . . depression" after the accident and that she would have custody of the children if not for the accident.

At the time of the termination hearing, Mother was incarcerated in the county jail. Her release was scheduled for July 12, 2016. She explained that, after her release from

jail, she planned to receive drug rehabilitation treatment at Recovery Lighthouse in Missouri. She maintained that she could complete the reintegration plan's tasks "in a short time" after her release from jail. She stated that she planned to live with her mother in Odessa, Missouri.

Finally, Mother conceded that she was not in compliance with any of the reintegration plan's tasks. Acknowledging she had made mistakes in the past, she asserted that placement in her care was in the children's best interests because she felt like she "could be a great mom."  She asked the court for another chance to prove herself.

*The Case File*

The case file generally shows that Mother made progress toward reintegration in the summer 2015. In a letter dated June 15, 2015, Hoffman stated that Mother had attended all recent visitation with T.W. and displayed appropriate parenting skills during all visits. Hoffman further stated that Mother was "very attuned" to T.W.'s needs. Hoffman noted that Mother's drug screens had been negative since April 23, 2015. Based on Mother's negative drug screens and her interactions with T.W., Hoffman recommended that she have unsupervised visitation with T.W.

In July 2015, Hoffman's court report indicated that Mother had continued to comply with and pass all drug screens. By that time, Mother was having five visits per week with T.W. and continued to demonstrate positive interactions during those visits. The court report noted that KVC was paying a portion of Mother's gas bill.

In a separate report, Hoffman indicated that Mother had progressed in completing the reintegration plan tasks associated with the four older children. Hoffman stated that Mother attended weekly supervised visitation with the four older children and those visits were positive. Hoffman also noted that Mother did an excellent job communicating with

7

KVC and had shown significant improvement in emotional regulation, obtained housing, attended counseling and narcotics anonymous, and completed a RADAC screen. Hoffman noted that Mother continued to search for employment.

In a letter dated July 27, 2015, Hoffman stated that Mother had completed all tasks outlined in the reintegration plan. Hoffman further stated that visitation was going well and Mother's drug screens had been negative since March 2015. Based on Mother's progress, Hoffman indicated that D.W. and K.W. would be reintegrated into Mother's care on August 18, 2015.

Hoffman's August 2015 court report indicated that Mother had attended regular visitation with the children and continued to pass all drug screens. The report also indicated that Mother obtained employment and was attending parenting classes. Finally, the report noted that Mother had two recent concerns but dealt with them in an appropriate way.

The case file shows that Mother's progress toward completing the reintegration plan abruptly stopped in the fall 2015. In her January 2016 court report, Hoffman stated that Mother had submitted to 78 drug screens as of January 21, 2016. Of those screens, Mother submitted 37 positive or no-show drug screens. Further, during her most recent drug screen, Mother apparently attempted to provide a false sample. Hoffman also indicated that, as of that date, Mother had only attended 12 of 39 scheduled individual therapy appointments and Mother had not attended a therapy session since July 21, 2015. Hoffman noted that Mother had been evicted from her home, and it was unknown where she was residing. Based on Mother's current lack of progress, Hoffman recommended that the district court terminate Mother's parental rights.

*Termination of Mother's Parental Rights*

At the conclusion of the evidence, Mother argued that 9 months before the termination hearing, she was on the road to reintegration of the children. She contended that she could reach reintegration if given the opportunity to receive drug rehabilitation.

The district court gave a bench ruling after hearing closing arguments. The district court terminated Mother's parental rights to the children, the unknown father's parental rights to T.W., and P.S.'s parental rights to K.W. and D.W. The district court declined to terminate Father's parental rights to X.M. and A.M., finding insufficient evidence to do so.

On August 22, 2016, the district court issued a written journal entry terminating Mother's parental rights to the children. The court stated that clear and convincing evidence demonstrated Mother was unfit under the statutory factors set forth in K.S.A. 2016 Supp. 38-2269 and Mother's unfitness was unlikely to change in the foreseeable future. The court concluded that termination of Mother's parental rights was in the children's best interests.

Mother's appeal brings the matter to us. On appeal, Mother's sole claim is that the district court erred in terminating her parental rights to the children.

Under K.S.A. 2016 Supp. 38-2269(a), when a child is adjudicated a CINC, a district court may terminate the parent's rights if the moving party establishes, by clear and convincing evidence, that "the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." If the district court finds the parent unfit, the court must then determine whether termination of parental rights is in the child's best interests. K.S.A. 2016 Supp. 38-2269(g)(1).

9

We review a district court's decision to terminate parental rights by considering "whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence," the parent's rights should be terminated. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008). In making this determination, we do not reweigh conflicting evidence, judge the credibility of witnesses, or redetermine questions of fact. 286 Kan. at 705.

As the trier of fact, the district court is in the best position to determine the best interests of a child, and we will not disturb the district court's judgment in the absence of an abuse of discretion. *In re K.P.*, 44 Kan. App. 2d 316, 322, 235 P.3d 1255 (2010). "Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. [Citation omitted.]" *State v. Gant*, 288 Kan. 76, 81-82, 201 P.3d 673 (2009).

*Unfitness*

Mother does not specifically address the district court's statutory findings. Nevertheless, clear and convincing evidence supports the district court's finding that she was unfit. The Revised Kansas Code for Care of Children provides a nonexclusive list of factors the district court must consider when determining parental fitness. See K.S.A. 2016 Supp. 38-2269(b) and (c). The existence of any one of these factors "standing alone may, but does not necessarily, establish grounds for termination of parental rights." K.S.A. 2016 Supp. 38-2269(f). The district court is not confined to the statutory factors in making its determination of parental fitness. See K.S.A. 2016 Supp. 38-2269(b).

In this case, the district court found that Mother was unfit based on the following statutory factors:

10

- Mother's use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature rendered her unable to care for the ongoing physical, mental, or emotional needs of the children—K.S.A. 2016 Supp. 38-2269(b)(3);

- Mother physically, mentally, or emotionally neglected the children—K.S.A. 2016 Supp. 38-2269(b)(4);

- Mother's conviction of a felony and imprisonment—K.S.A. 2016 Supp. 38-2269(b)(5);

- Reintegration failed despite the reasonable efforts made by appropriate public or private agencies to rehabilitate the family—K.S.A. 2016 Supp. 38-2269(b)(7);

- Mother showed a lack of effort to adjust her circumstances, conduct, or conditions to meet the needs of the children—K.S.A. 2016 Supp. 38-2269(b)(8);

- The children had been in extended out-of-home placement as a result of actions or inactions attributable to Mother—K.S.A. 2016 Supp. 38-2269(b)(9);

- Mother failed to assure care of the children in the parental home when able to do so—K.S.A. 2016 Supp. 38-2269(c)(1);

- Mother failed to maintain regular visitation—K.S.A. 2016 Supp. 38-2269(c)(2); and

- Mother failed to carry out a reasonable plan approved by the court directed toward the integration of the children into a parental home—K.S.A. 2016 Supp. 38-2269(c)(3).

*1. Mother's use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature rendered her unable to care for the ongoing physical, mental, or emotional needs of the children—K.S.A. 2016 Supp. 38-2269(b)(3).*

In Mother's case, a rational factfinder could undoubtedly find it highly probable that Mother's use of illegal drugs rendered her unable to care for the children's ongoing physical, mental, and emotional needs. Throughout the proceedings below, Mother struggled to refrain from regular drug use. Even during her pregnancy with T.W., she apparently used several illegal drugs. Without belaboring the point, clear and convincing evidence supports that Mother's consistent drug use prevented her from adequately caring for the children.

*2. Mother physically, mentally, or emotionally neglected the children—K.S.A. 2016 Supp. 38-2269(b)(4).*

Neither party addresses this factor. An independent review of the record reveals very little evidence bearing on whether Mother's conduct physically, mentally, or emotionally neglected the children. Certainly, the evidence at the termination hearing demonstrated Mother had a serious drug problem. But no evidence suggested Mother's drug problem caused her to neglect the children in any fashion. Indeed, Mother did not have custody of the children for any significant periods of time in which she would have had the opportunity to neglect the children. Based on the record, insufficient evidence supports the district court's finding that Mother physically, mentally, or emotionally neglected the children.

*3. Mother's conviction of a felony and imprisonment—K.S.A. 2016 Supp. 38-2269(b)(5).*

Neither party addresses this factor. But a rational factfinder could conclude it was

12

highly probably that Mother's felony conviction and jail sentence contributed to her parental unfitness. Mother pled guilty to possession of methamphetamine, and the court ordered her to serve a jail sentence. Due to her felony conviction, Mother was unable to resume any reintegration efforts and her incarceration significantly extended the children's out-of-home placement. Based on Mother's testimony, clear and convincing evidence supports the district court's finding that Mother's felony conviction and sentence contributed to her parental unfitness.

4. *Reintegration failed despite the reasonable efforts made by appropriate public or private agencies to rehabilitate the family—K.S.A. 2016 Supp. 38-2269(b)(7).*

Neither party addresses the district court's finding that reintegration failed despite the reasonable efforts made by appropriate public or private agencies to rehabilitate the family. K.S.A. 2016 Supp. 38-2269(b)(7) imposes an obligation on the appropriate agencies to exercise reasonable efforts toward reintegration of the child into the parent's care. But an agency is not required to exhaust any and all resources to rehabilitate a parent. *In re J.R.*, No. 104,975, 2011 WL 2175953, at *5 (Kan. App. 2011) (unpublished opinion). An agency must always pursue rehabilitation efforts with consideration for the child's best interests, understanding a child's perception of time differs from that of an adult. 2011 WL 2175953, at *5.

In this case, a rational factfinder could conclude it was highly probable that reasonable efforts of KVC to rehabilitate the family were unsuccessful. After the district court's initial CINC adjudications, KVC developed a plan to reintegrate the children into Mother's care. The reintegration plan sought to address Mother's drug addiction and required her to obtain mental health treatment. Hoffman further assisted in Mother's progress toward reintegration. Yet, despite KVC's efforts, Mother simply could not resist her drug addiction and consistently tested positively for illegal drugs. Her drug addiction

13

eventually led to her arrest and incarceration. By the time of the termination hearing, over a roughly 1 1/2-year period, rehabilitation of the family was not progressing despite KVC's efforts.

Based on those facts, clear and convincing evidence supports the district court's finding that reintegration failed despite the reasonable efforts made by appropriate public or private agencies to rehabilitate the family.

> 5. *Mother showed a lack of effort to adjust her circumstances, conduct, or conditions to meet the needs of the children—K.S.A. 2016 Supp. 38-2269(b)(8).*

With regard to this factor, the State concedes that Mother was capable of caring for the children and that Mother sufficiently cared for D.W. and K.W. for a short time.

Despite the State's admission, a rational factfinder could conclude it was highly probable that Mother showed a lack of effort to adjust her circumstances, conduct, or conditions to meet the needs of the children. At the termination hearing, Mother readily admitted that she battled an ongoing drug addiction. Although KVC offered assistance with Mother's addiction, Mother never took the necessary steps to beat the addiction, which likely would have allowed her to properly care for the children. Mother had the opportunity to receive drug and mental health treatment, but she failed to exert sufficient effort to complete either of those treatments with any success. Although Mother claimed at the termination hearing that she could put her children's best interests first, her actions demonstrated otherwise.

Therefore, an independent review of the record reveals that clear and convincing evidence supports the district court's finding that Mother showed a lack of effort to adjust her circumstances, conduct, or conditions to meet the needs of the children.

14

6. *The children had been in extended out-of-home placement as a result of actions or inactions attributable to Mother—K.S.A. 2016 Supp. 38-2269(b)(9).*

The State argues that "there is little question" the children had been in extended out-of-home placement as a result of Mother's actions or inactions, and a rational factfinder could conclude it was highly probable that the children had been in extended out-of-home placement as a result of Mother's drug use. Initially, on August 12, 2014, the district court removed the children from Mother's care and placed them in DCF custody due to Mother testing positive for methamphetamine. Mother's continued drug use and positive UA's persisted throughout KVC's attempt to reintegrate the children into her care. Even though Mother showed some progress, she quickly relapsed after the car accident. Her drug use eventually led to her arrest and incarceration. Although K.W. and D.W. were returned to Mother's care, it was only for a short time. Mother was involved in the accident, the children were forced to stay with a relative, and then Mother's drug use prevented the children from returning to Mother's care. With the exception of the short period between K.W. and D.W.'s trial placement in Mother's care and the car accident, the children were in out-of-home placement for a roughly 1 1/2 years. Mother's failure to complete the reintegration plan, especially her failure to refrain from drug use, caused the out-of-home placement to continue indefinitely until the termination hearing.

Based on the foregoing, clear and convincing evidence supports the district court's finding that the children had been in extended out-of-home placement as a result of actions or inactions attributable to Mother.

7. *Mother failed to assure care of the children in the parental home when able to do so—K.S.A. 2016 Supp. 38-2269(c)(1).*

Neither party addresses this factor. An independent review of the record demonstrates that a rational factfinder could conclude it was highly probable that Mother

15

failed to assure care of the children in her home when given the opportunity. On August 18, 2015, because Mother was making progress toward reintegration, DCF placed D.W. and K.W. in Mother's custody. But D.W. and K.W. remained in Mother's custody for less than 2 weeks. By August 27, 2015, Mother was injured in the car accident, and D.W. and K.W. were temporarily placed with a relative. Mother could have retained custody of D.W. and K.W., but she tested positive for illegal drugs and the two children were placed back in foster care. Although Mother had a viable opportunity to demonstrate she could care for the children full time, she was unsuccessful in refraining from drug use and thus could not assure the children's wellbeing while in her care. As such, clear and convincing evidence supports the district court's finding that Mother failed to assure care of the children in the parental home when able to do so.

        *8.   Mother failed to maintain regular visitation—K.S.A. 2016 Supp. 38-2269(c)(2).*

The State highlights that, before the termination hearing, Mother had no visitation with the children for 7 months. Based on that single fact, the State asserts that sufficient evidence supports this factor.

A review of the record indicates that a rational factfinder could conclude it was highly probable that Mother failed to maintain regular visitation with the children. Due to Mother's numerous positive UA's, her visitation with the children was somewhat inconsistent. She eventually made progress, allowing for the trial placement of D.W. and K.W. She also maintained regular visitation with her other children at that time. But, ultimately, she was unable to refrain from drug use. As the State highlights, Mother had no visitation from October 2015 until the termination hearing in May 2016.

Based on the inconsistency of Mother's visitation and the extended gap of no visitation immediately before the termination hearing, clear and convincing evidence supports the district court's finding that Mother failed to maintain regular visitation.

16

9. *Mother failed to carry out a reasonable plan approved by the court directed toward the integration of the children into a parental home—K.S.A. 2016 Supp. 38-2269(c)(3).*

The State points to Mother's admissions at the termination hearing that she failed to comply with several reintegration tasks. Based on those admissions, the State argues that overwhelming evidence supports the district court's finding that Mother failed to carry out a reasonable plan approved by the court directed toward the integration of the children into a parental home. An independent review of the record similarly demonstrates that a rational factfinder could find it highly probable that Mother failed to carry out the reintegration plan approved by the court directed toward integration of the children into her home.

Based on the several factors discussed above, clear and convincing evidence supports the district court's finding that Mother was unfit.

*Foreseeable Future*

Mother argues that insufficient evidence supports the district court's finding that her unfitness was unlikely to change in the foreseeable future. She contends that she made progress toward reintegration, and the 4-month period between August 2015 and December 2015 was inadequate to determine her future unfitness. In response, the State asserts that Mother's drug use and unwillingness to attend therapy "doomed any real possibility" that she could effectively parent her children.

We measure the "foreseeable future . . . from the child's perspective, not the parent['s], as time perception of a child differs from that of an adult." *In re S.D.*, 41 Kan. App. 2d 780, Syl. ¶ 9, 204 P.3d 1182 (2009). In determining a parent's prospective

17

fitness, we may judicially predict from the parent's past history. *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982).

Mother points to *In re K.R.*, 43 Kan. App 2d. 891, 233 P.3d 746 (2010), to support her argument that insufficient evidence supports the district court's finding that her unfitness was unlikely to change in the foreseeable future. In that case, the social worker testified that she was unable to say there were setbacks as of the State's filing of its motion to terminate. Further, at the termination hearing, the case manager did not assert that reintegration was no longer viable, although she had believed so in the past. The therapist testified that the mother could become a good parent in 6 months. And the mother's testimony indicated that she had made substantial progress toward all conditions of reintegration. On appeal, a panel of this court held that, based on the evidence, insufficient evidence supported the district court's finding that the mother's unfitness was unlikely to change in the foreseeable future.

Here, by contrast, a rational factfinder could conclude it was highly probable that Mother's unfitness was unlikely to change in the foreseeable future. Unlike *In re K.R.*, by the time of the termination hearing, Mother had made no progress in completing the reintegration plan. Although Mother showed potential, she quickly fell back on bad habits after the car accident. She failed numerous UA's and neglected her mental health treatment. Further, because of her drug use, Mother's visitation with the children was abruptly stopped. While there was a possibility she could rehabilitate her drug addiction, her past history demonstrated that any hiccup in her recovery would likely result in another relapse.

Based on Mother's past conduct, clear and convincing evidence supports the district court's finding that her unfitness was unlikely to change in the foreseeable future.

18

*Best Interests*

Mother asserts that it is unclear whether the district court considered whether termination of her parental rights was in the children's best interests. She contends that, although the district court made some findings, it never mentioned whether termination of her parental rights was in the children's best interests. But contrary to her assertion, the district court plainly found that termination of Mother's parental rights was in the children's best interests. The journal entry for each child expressly states that termination is in the individual child's best interests. Although it did not make an express bench ruling, the district court clearly made a best interests finding.

Further, an independent review of the record demonstrates the district court reasonably concluded that termination of Mother's parental rights was in the children's best interests. The children were initially removed from Mother's care in August 2014. For over 1 1/2 years, the children remained in DCF custody. D.W. and K.W. were briefly placed in Mother's custody, but the placement lasted less than 2 weeks. During the course of their out-of-home placement, Mother maintained some visitation with the children. But it was inconsistent due to Mother's drug use and, since October 2015, Mother had no visitation with any of the children. At the very earliest, Mother would not have had visitation with the children until her release from jail in July 2016. Most importantly, Mother had not shown that she could successfully rehabilitate her drug addiction in the near future. Given the future uncertainty of Mother's drug use, the district court reasonably concluded it was in the children's best interests to continue to allow the children to build healthy relationships with their foster parents and avoid contact with Mother at the risk that her drug use would negatively affect their well-being.

For those reasons, the district court did not abuse its discretion in concluding that termination of Mother's parental rights was in the children's best interests.

*Conclusion*

Considering all the evidence, in the light favoring the State, clear and convincing evidence supports the district court's ruling that Mother was unfit and her unfitness was unlikely change in the foreseeable future. The district court did not abuse its discretion in concluding termination of Mother's parental rights was in the children's best interests. The district court did not err in terminating Mother's parental rights.

Affirmed.